Nancy J. NEAL, Plaintiff,

v.

XEROX CORPORATION, Defendant.

No. Civ.A. 2:97CV553.

United States District Court,
E.D. Virginia,
Norfolk Division.

Jan. 15, 1998.

Everett Carter Meixel, Virginia Beach, VA, John Christopher Allen, IV, Newport News, VA, for Plaintiff.

Nancy J. Neal, Virginia Beach, VA, pro se.

Eva Susan Tashjian–Brown, Rodney A. Satterwhite, Lisa Ann Bertini, McGuire, Woods, Battle & Boothe, LLP, Richmond, VA, for Defendant.

### OPINION AND ORDER

CLARKE, District Judge.

This matter is before the Court on defendant Xerox Corporation's ("Xerox") Motion to Dismiss and Motion to Stay Discovery and plaintiff Nancy J. Neal's Motions for Sanctions. Ms. Neal appeared *pro se* and Xerox appeared through counsel at a hearing on December 22, 1997, to argue Xerox's two motions. Immediately following the hearing, Ms. Neal filed two Motions for Sanctions against Xerox's counsel. For the reasons that follow, Xerox's Motion to Dismiss is GRANTED, Xerox's Motion to Stay Discovery is MOOT, and Ms. Neal's Motions for Sanctions are summarily DENIED.

### I.

This matter has an extensive history involving two Title VII actions, two motions to withdraw, two motions for sanctions and several allegations of attorney misfeasance.

Allegedly, Xerox subjected Ms. Neal to employment discrimination while Ms. Neal was employed at Xerox. Ms. Neal filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). *See* Complaint ¶ 3, *Neal v. Xerox Corp.*, No. 2:97cv553 (filed June 4, 1997).[1] On October 4, 1996, Ms. Neal received her Notification of Right to Sue from the EEOC (hereinafter "right-to-sue letter"). *Id.*

Ms. Neal engaged an attorney, Everett Carter Meixel, Esq., to file a Title VII action on her behalf. Her complaint was filed December 26, 1996, within 90 days of receipt of her EEOC right-to-sue letter. *See* Complaint, *Neal v. Xerox Corp.*, No. 2:96cv1235 (filed Dec. 26, 1996).[2]

After filing this first Title VII action, Mr. Meixel consulted with and brought in another attorney, John C. Allen, IV, Esq., to help with Ms. Neal's case. Ms. Neal claims that she "never hired Mr. Allen to represent [her]." Hearing Transcript at 40 (No. 2:97cv553) (Oct. 2, 1997 hearing).[3] Nevertheless, the record is clear that Ms. Neal knew she was being represented by Mr. Allen. She stated, "I understood that Mr. Allen was going to be assisting Mr. Meixel in a—in a, you know, subordinate capacity, but no more than that." *Id.* at 44. Moreover, Mr. Allen appeared as co-counsel of record for Ms. Neal at the initial Pretrial Conference on February 26, 1997, and he is also listed as counsel of record in all filings with the Court after February 5, 1997.

On June 2, 1997, a Stipulation of Dismissal was entered dismissing Ms. Neal's first Title VII action. The Stipulation of Dismissal states as follows:

> The parties, by counsel, and pursuant to Rule 41(a) of the Federal Rules of Civil Procedure have stipulated that the above entitled action be dismissed, without prejudice. It is therefore ORDERED that this action be, and hereby is DISMISSED, the respective parties to bear their own costs in this action.

Stipulation of Dismissal, *Neal v. Xerox Corp.*, No. 2:96cv1235 (entered June 2, 1997).

Prior to the dismissal, counsel for Xerox cautioned Messrs. Meixel and Allen to research whether they would be able to refile Ms. Neal's case after taking a Rule 41(a) voluntary dismissal. *See* Dec. 22 Transcript at 4 & 12. Xerox's counsel was placed in an

---

**1.** There are two separate lawsuits involving the same parties: *Neal v. Xerox Corp.*, No. 2:96cv1235 (filed Dec. 26, 1996) and *Neal v. Xerox Corp.*, No. 2:97cv553 (filed June 4, 1997). The December 1996 lawsuit was dismissed on June 2, 1997. At issue now is whether the June 1997 suit should be dismissed.

**2.** This complaint was amended on May 13, 1997, but the amendment has no bearing on the issues before the Court.

**3.** All references to hearing transcripts refer to hearings held in Ms. Neal's second Title VII action, No.2:97cv553. There were three hearings held in the second action, September 25, October 2, and December 22,1997. Future references to these hearing transcripts will be as follows: Sept. 25 Transcript, Oct. 2 Transcript, and Dec. 22 Transcript.

ethical dilemma because she so advised Messrs. Meixel and Allen.

I can tell you as an officer of the Court that I probably violated my own ethical obligations to zealously represent my client by advising plaintiff's counsel to research the issue before they chose to dismiss. But I felt that we had to all be operating on the same front.

*Id.* at 12. Xerox's counsel even went so far as to put her position in writing. She drafted a letter to Ms. Neal's counsel that included the following sentence: "By agreeing to this, Xerox is not making any representations about Plaintiff's right to bring other actions...." Exhibit 1 to Mem. in Supp. of Mot. to Stay Disc. (filed Oct. 20, 1997).

Nonetheless, Messrs. Meixel and Allen decided to voluntarily dismiss Ms. Neal's first Title VII action. Based on their arguments at a subsequent hearing in this matter, it appears that both attorneys were operating under the erroneous belief that the statute of limitations was tolled during the pendency of Ms. Neal's suit, and the suit could be refiled. *See* Oct. 2 Transcript at 4 (Mr. Allen: "we knew that there was a three-day period that the case could be refiled again or [Ms. Neal] would lose her ability to sue the defendant"); *id.* at 10 (Mr. Meixel: "The only reason that we refiled it at all, Judge, is that we knew there was a three-day window there"). On June 4, 1997, Ms. Neal's attorneys refiled her lawsuit. *See* Complaint, *Neal v. Xerox Corp.*, No. 2:97cv553 (filed June 4, 1997).

Ms. Neal claims that she did not authorize the dismissal of her first Title VII action or the filing of the second action. *See* Oct. 2 Transcript at 16 ("I told [Mr. Meixel] emphatically I had no interest in doing a dismissal"); *id.* at 21 (Mr. Meixel "did not have my permission ... to dismiss my case"); *id.* at 26 ("I did not authorize [Mr. Meixel] to refile my lawsuit"); *id.* at 32 ("I did not know anything about" the dismissal of the lawsuit); *see also* Dec. 22 Transcript at 15 & 18. Contrary to Ms. Neal's assertions, Mr. Meixel claims to have discussed the issue of dismissal with Ms. Neal.

MR. MEIXEL: Your honor, I did notify Ms. Neal and had discussed it with her several times—the fact that we may very well need to dismiss her case, not only because—

THE COURT: Did she agree it should be dismissed?

MR. MEIXEL: Well, her exact words were, Judge, "I would rather not you do that, but if you have to do it, do it only as a last resort."

Those were the exact words that she used to me. And at this particular time I think it was the last resort because this dismissal happened as a result of depositions conducted by Xerox, at which time they deposed Ms. Neal, and Mr. Allen and I both became concerned that she had not been truthful during her deposition.

Oct. 2 Transcript at 9. Furthermore, it was Mr. Allen's "understanding" that Mr. Meixel had notified Ms. Neal that they were going to dismiss her first lawsuit. *Id.* at 7.

Ms. Neal was upset when she found out about the dismissal of her first lawsuit and the filing of her second. The relationship between Ms. Neal and her two attorneys began to sour. *See* Oct. 2 Transcript at 8 (Mr. Allen: "It was—I won't say it was hostile, but it was an unpleasant conversation [with Ms. Neal]"). Soon thereafter, Mr. Meixel and Mr. Allen filed a motion to withdraw as counsel for Ms. Neal.

The Court convened a hearing on September 25, 1997, to address the motion to withdraw. At the hearing, the Court refused to hear the issue of withdrawal because Ms. Neal was not present and her counsel had failed to give her sufficient notice of the time and date of the hearing. *See* Sept. 25 Transcript at 2–3. Before the hearing was adjourned, Mr. Meixel informed the Court that the complaint and summons from the June 4, 1997 lawsuit had not been served on Xerox and the 120-day window of service [4] would expire in two weeks. *See id.* at 5. On Ms. Neal's behalf, Mr. Meixel moved for an extension of time for service. *Id.* at 6–7. The Court took the motion under advisement and directed Messrs. Meixel and Allen to per-

---

4. *See* Fed.R.Civ.P. 4(m).

sonally contact Ms. Neal to schedule another hearing where Ms. Neal would be present to address the motion to withdraw and service of process issues. *Id.* at 7–9.

Another hearing was convened on October 2, 1997, one day before the 120–day service of process deadline was to expire. *See* Oct. 2 Transcript at 12. Ms. Neal, Mr. Meixel, and Mr. Allen appeared to argue the motion to withdraw. Mr. Meixel argued that he lost faith in Ms. Neal's case after her deposition was taken, was unable to work with Ms. Neal, and Ms. Neal discharged his services. *See id.* at 9–11. Mr. Allen argued that he was closing his private law practice to become an Assistant Commonwealth's Attorney and therefore needed to withdraw from all his pending cases. *Id.* at 39. Ms. Neal argued that she did not authorize her counsel to dismiss her previous lawsuit or file the second one, *id.* at 16, 21, 26, & 32, was unable to retain another attorney to represent her in the pending case, *id.* at 19, wanted to proceed with her case, *id.*, yet did not desire to proceed *pro se, id.* at 22.

The Court declined to permit counsel to withdraw until Ms. Neal consented to the withdrawal and arrangements were made for substitute counsel. The Court was obviously concerned about Ms. Neal's ability to conduct her litigation *pro se.* It is also improper for an attorney to file an action in this Court and then abandon the case without any further effort to move it along on the Court's docket.[5]

After much discussion, Ms. Neal finally agreed to sign an order allowing Mr. Allen to withdraw. *See* Oct. 2 Transcript at 44–45. By Order entered October 2, 1997, the Court permitted Mr. Allen to withdraw with Ms. Neal's consent expressly conditioned on the fact that she refused to waive her position that she had never authorized Mr. Allen to act as co-counsel in the case. Order at 2

(No. 2:97cv553) (entered Oct. 2, 1997); *see* Oct. 2 Transcript at 44–45. The Court refused, however, to allow Mr. Meixel to withdraw at that time because it wanted at least one attorney of record who would be responsible for moving the case along on the Court's docket. *See* Oct. 2 Transcript at 41.

At the October 2, 1997 hearing, the Court also addressed Ms. Neal's motion for an extension of time in which to serve the suit papers on Xerox. *See id.* at 35–36. The Court granted the motion and allowed a two-week extension on service which would give Ms. Neal more time to engage substitute counsel, resolve her differences with Mr. Meixel, or decide to pursue her case *pro se. See* Order at 2 (No. 2:97cv553) (entered Oct. 2, 1997). Service on Xerox was ultimately executed on October 15, 1997.

On October 29, 1997, Mr. Meixel and Ms. Neal jointly filed an Amended Motion to Withdraw. The motion alleges that Mr. Meixel has experienced health problems, and treatment for his health problems involves taking narcotics that may affect his judgment. *See* Amended Mot. to Withdraw as Counsel of Record ¶ 4 (filed Oct. 23, 1997). The motion also alleges that Ms. Neal joins in the motion and consents to the withdrawal. *Id.* 16. By letter dated October 27, 1997, Ms. Neal advised the Court that she voluntarily consented to Mr. Meixel's amended motion to withdraw, was unable to retain substitute counsel, and desired to continue her case *pro se.* By Order entered October 29, 1997, the Court granted Mr. Meixel's amended motion to withdraw. Order (No. 2:97cv553) (entered Oct. 29, 1997).

After being served with process and during the wrangling over Ms. Neal's legal representation, Xerox filed a Motion to Dismiss and a Motion to Stay Discovery. These will be addressed below along with the most re-

---

**5.** Eastern District of Virginia Local Rule 83.1(F) states: "Any counsel who joins in a pleading, motion, or other paper filed with the Court will be held accountable for the case by the Court. At least one attorney of record from each law firm of record must personally be present at all hearings, pretrials, and trials. This obligation may not be avoided or delegated without leave of Court."

Local Rule 83.1(G) governs withdrawal of counsel and states:
"No attorney who has entered an appearance in any civil or criminal action shall withdraw such appearance, or have it stricken from the record, except on order of the Court and after reasonable notice to the party on whose behalf said attorney has appeared."

cent two Motions for Sanctions filed by Ms. Neal.

## II.

### A.

In its Motion to Dismiss, Xerox contends that the June 4, 1997 complaint was not filed within 90 days of Ms. Neal's receipt of the EEOC's right-to-sue letter on October 4, 1996. *See* 42 U.S.C.A. § 2000e–5(f)(1) (West 1994) (stating that a litigant may commence a civil action within 90 days after receiving right-to-sue letter). Xerox argues that since Ms. Neal's first Title VII action was voluntarily dismissed pursuant to Fed.R.Civ.P. 41(a), the 90 day limitation period was not tolled during the pendency of the first action. Thus, Xerox argues that Ms. Neal's lawsuit is time-barred.

Ms. Neal, now proceeding *pro se*, makes the contrary argument. She contends that her first lawsuit was filed December 26, 1996—well within the 90 day statutory period—and the pendency of the first lawsuit between December 26, 1996 and June 2, 1997 tolled the 90 day limitation period. Therefore, Ms. Neal argues, the filing of her second complaint on June 4, 1997, was still within the 90 day time-frame. Alternatively, Ms. Neal argues that the limitations period should be equitably tolled because she did not authorize her attorneys to dismiss her first complaint.

### B.

■ Ms. Neal's arguments are insufficient to save her suit. The simple fact that her complaint now before the court was not filed within the 90 day statutory limitation period precludes her Title VII claims. The limitation period in Title VII is clear—a civil litigant may bring his or her own suit within 90 days after receiving a right-to-sue letter from the EEOC. *See* 42 U.S.C.A. § 2000e–5(f)(1). Civil suits may not be brought, however, after the expiration of the 90 day period. *Baldwin County Welcome Center v. Brown*, 466 U.S. 147, 149–50, 104 S.Ct. 1723, 80 L.Ed.2d 196 (1984). Ms. Neal received her right-to-sue letter on October 4, 1996, and filed her present Title VII action on June 4,

1997. Her lawsuit was filed more than 90 days after receipt of the right-to-sue letter and is therefore time-barred.

■ Ms. Neal argues that the pendency of her first complaint tolled the 90 day limitation period. She is incorrect. Generally, "[t]he statute of limitations is not tolled by bringing an action that later is dismissed voluntarily under Rule 41(a)." Charles A. Wright & Arthur R. Miller, 9 *Federal Practice and Procedure* § 2367 (1995). Judge Merhige in the Richmond Division of this Court has specifically addressed this question in the context of Title VII. He succinctly outlines the rules:

> Where an action is voluntarily dismissed without prejudice, the parties are left as if the action had never been brought. Consequently, the statute of limitations is not tolled by filing an action that is subsequently voluntarily dismissed. These principles have been applied to Title VII actions.

*Braxton v. Virginia Folding Box Co.*, 72 F.R.D. 124, 126 (E.D.Va.1976) (citations omitted). Other courts are in agreement. *See Garfield v. J.C. Nichols Real Estate*, 57 F.3d 662, 666 (8th Cir.), *cert. denied*, 516 U.S. 944, 116 S.Ct. 380, 133 L.Ed.2d 303 (1995); *Brown v. Hartshorne Pub. Sch. Dist. No. 1*, 926 F.2d 959, 961 (10th Cir.1991); *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1027 (5th Cir.1988); *Wilson v. Grumman Ohio Corp.*, 815 F.2d 26, 28 (6th Cir.1987). In an unpublished opinion, the Fourth Circuit Court of Appeals reaches the same conclusion. *See Stokes v. Pullen*, No. 97–1038, 122 F.3d 1062, 1997 WL 577642, *1 (4th Cir.1997) (unpublished).

■ At oral argument, Ms. Neal cited two Fourth Circuit cases claiming that they preclude the granting of Xerox's motion to dismiss. *See* Dec. 22 Transcript at 5–12. She argues that under *Scoggins v. Douglas*, 760 F.2d 535 (4th Cir.1985), and *Yarber v. Allstate Ins. Co.*, 674 F.2d 232 (4th Cir.1982), federal courts must apply state tolling provisions to federal civil rights claims like hers. Contending that her Rule 41(a) voluntary dismissal is identical to a non-suit under Virginia law, she argues that Virginia's non-suit

statute applies to toll the statute of limitations during the pendency of her first suit and allows refiling of her suit within six months of the voluntary dismissal. *See* Va. Code Ann. § 8.01–229(E)(3) (Michie Supp. 1997).

Ms. Neal's argument is unpersuasive. *Scoggins* involves a § 1983 lawsuit governed by a state limitations period. *See Scoggins,* 760 F.2d at 537. *Yarber* involves a negligence and personal injury suit brought in federal court on diversity jurisdiction. *Yarber,* 674 F.2d at 233–34. The claims at issue in *Yarber* are also governed by a state limitations period. *Id.* at 235. When a state limitations period is applicable, a federal court must also apply state tolling provisions. *Scoggins,* 760 F.2d at 537; *Yarber,* 674 F.2d at 237. State tolling provisions do not apply, however, "[w]here, as here, the plaintiff voluntarily dismisses a lawsuit that was brought in federal court, asserted a purely federal claim, and was subject to a federal statute of limitations...." *Stokes, supra.* In its unpublished opinion in *Stokes,* the Fourth Circuit relies on a Seventh Circuit decision that explains the rule:

> When the timeliness of a federal cause of action is measured by a state statute of limitations, it only makes sense to apply the state's tolling and savings provisions, for they are interrelated. The same cannot be said when the federal claim in question is governed by a *federal* statute of limitations, as it is in the present case. The law is clear. Where, as here, the plaintiff voluntarily dismisses a lawsuit which was brought in federal court, asserts a purely federal claim, and is subject to a federal statute of limitations, state savings statutes do not apply.

*Beck v. Caterpillar, Inc.,* 50 F.3d 405, 406–07 (7th Cir.1995) (internal citations omitted & emphasis in original); *see Garfield,* 57 F.3d at 665; *Brown,* 926 F.2d at 961. Since Ms. Neal brings a federal Title VII action that is governed by a federal 90 day limitations peri-od, Virginia's non-suit provision does not save her claim.

Next, Ms. Neal argues that the limitations period should be equitably tolled since she allegedly did not authorize her counsel of record to voluntarily dismiss her first Title VII action. *See Zipes v. Trans World Airlines, Inc.,* 455 U.S. 385, 393, 102 S.Ct. 1127, 71 L.Ed.2d 234 (1982) (holding that Title VII discrimination claims are subject to equitable tolling). Without making factual findings on Ms. Neal's allegation that her counsel dismissed her first lawsuit without her authority,[6] the Court holds that Ms. Neal is not entitled to equitable tolling even if her counsel acted without her authority.

The doctrine of equitable tolling has limited application. The Supreme Court has recognized equitable tolling only "in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period, or where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass." *Irwin v. Dep't of Veterans Affairs,* 498 U.S. 89, 96, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990); *see Weick v. O'Keefe,* 26 F.3d 467, 470 (4th Cir.1994) (equitable tolling warranted where employer "lulled [claimant] into inaction"); *Olson v. Mobil Oil Corp.,* 904 F.2d 198, 201 (4th Cir. 1990) (no equitable tolling where employee "possessed the information needed to file a timely discrimination charge"); *English v. Pabst Brewing Co.,* 828 F.2d 1047, 1049 (4th Cir.1987) (equitable tolling warranted where employer "has wrongfully deceived or misled the plaintiff"), *cert. denied,* 486 U.S. 1044, 108 S.Ct. 2037, 100 L.Ed.2d 621 (1988).

Equitable relief should be granted only "sparingly." *Irwin,* 498 U.S. at 96. The Fourth Circuit cautions that it should apply to only a narrow set of cases.

> Equitable tolling is a narrow limitations exception[.] Courts cannot countenance ad hoc litigation for every missed deadline. The repose that statutes of limitations pro-

---

**6.** The evidence on this point is in dispute. Ms. Neal claims that she did not authorize the dismissal of her first lawsuit. *See* Oct. 2 Transcript at 16, 21, 26, & 32; Dec. 22 Transcript at 15 & 18. Her counsel argues to the contrary. *See* Oct.

2 Transcript at 7 & 9. At the October 2, 1997 hearing, the Court declined to make a factual finding on this issue and declines to do so here. *See id,* at 43 (The Court: "that's another matter for another time").

vide will be lost if their applicability is "up for grabs" in every case. At some point, "the right to be free of stale claims ... comes to prevail over the right to prosecute them."

*Olson,* 904 F.2d at 201 (citations omitted).

Here, Xerox's right to be free of this case prevails over Ms. Neal's right to prosecute it. This is not a case where Ms. Neal filed a defective pleading within the limitations deadline. She had, on its face, a valid suit pending that her lawyers voluntarily dismissed. *See* Stipulation of Dismissal, *Neal v. Xerox Corp.,* No. 2:96cv1235 (entered June 2, 1997). Nor has Ms. Neal produced any evidence that Xerox misled or deceived her in any way. Indeed, the facts are to the contrary. Xerox's counsel stated at oral argument that she warned Ms. Neal's lawyers to research the issue and proceed cautiously before entering into the Rule 41(a) voluntary dismissal. *See* Dec. 22 Transcript at 4 & 12.

Messrs. Meixel and Allen have given the Court no coherent reason for dismissing the first case and then filing a second case within two days thereafter.[7] On the record before this Court, it appears that Messrs. Meixel and Allen either failed to sufficiently research the ramifications of a Rule 41(a) voluntary dismissal or just wanted to be rid of her case. *See* Oct. 2 Transcript at 4 & 10. Neither reason is a justification for equitable tolling. The Supreme Court notes that equitable tolling is inappropriate "where the claimant failed to exercise due diligence in preserving [her] legal rights." *Irwin,* 498 U.S. at 96; *see Baldwin County Welcome Center,* 466 U.S. at 151. Here, we have a case of a client's attorneys failing to exercise due diligence in preserving their client's legal rights.

Ms. Neal's attorneys' dismissal of her first lawsuit is regrettably attributable to Ms. Neal. Any other conclusion would prejudice Xerox. In our system of justice, clients are bound by their counsel's knowledge and actions. Our courts could not process cases

otherwise. In 1879, Justice Field wrote, "[t]he law ... considers the principal as affected with notice of all facts, notice of which can be charged upon the attorney." *Smith v. Ayer,* 101 U.S.(11 Otto) 320, 326, 25 L.Ed. 955 (1879). This axiom has not been diluted since Justice Field first wrote it. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. Partnership,* 507 U.S. 380, 397, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993) (clients are "held accountable for the acts and omissions of their chosen counsel"); *Coleman v. Thompson,* 501 U.S. 722, 753, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991) ("[a]ttorney ignorance or inadvertence" is charged to the client). Modern cases point to the functioning of our justice system as the primary rationale for making clients responsible for their attorney's acts.

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have "notice of all facts, notice of which can be charged upon the attorney."

*Link v. Wabash R.R. Co.,* 370 U.S. 626, 633–34, 82 S.Ct. 1386, 8 L.Ed.2d 734 (1962) (citing *Smith v. Ayer,* 101 U.S. at 326).

Here, if Ms. Neal is given a second chance, other litigants, including Xerox, will rightfully question the operation and legitimacy of our legal system. It would be unfair to put Xerox to additional expense because of the unexplained actions of Ms. Neal's counsel. Xerox argues that Ms. Neal's remedy is against her counsel. *See* Dec. 22 Transcript at 19–24. Based on the record in this case

---

7. The Court is aware of vague statements by Mr. Meixel that he lost confidence in Ms. Neal's case after her deposition was taken. *See* Oct. 2 Transcript at 9. This does not explain, however, why the same claims were filed again within two days of the dismissal of Ms. Neal's first case. More-

over, Ms. Neal states that Mr. Meixel was only present for the first hour of her deposition. Oct. 2 Transcript at 16 ("Mr. Meixel left my deposition approximately one hour after it began. I was really not represented by anyone at my deposition.").

and for the reasons outlined above, Xerox's Motion to Dismiss is GRANTED.

### III.

Xerox filed a Motion to Stay Discovery. Since the Motion to Dismiss is granted, the Motion to Stay Discovery is MOOT.

### IV.

Following oral argument on Xerox's motions, Ms. Neal filed two Motions for Sanctions pursuant to Fed.R.Civ.P. 11(b). She claims that Xerox's motion to dismiss "is not well grounded in fact, and does not present a legally tenable argument." Mot. for Sanctions on Def.'s Mot. to Dismiss at 1. Similarly, she claims that Xerox's motion to stay "is not proper, nor well grounded in fact, or warranted by existing law." Mot. for Sanction on Def.'s Mot. to Stay or Limit Disc. at 1.

In light of the Court's ruling on Xerox's Motion to Dismiss, Ms. Neal's Motions for Sanctions must fail and are therefore DENIED.

### V.

For the foregoing reasons, Xerox's Motion to Dismiss is GRANTED, Xerox's Motion to Stay Discovery is MOOT, and Ms. Neal's Motions for Sanctions are DENIED.

The Clerk is DIRECTED to mail a copy of this Opinion and Order to counsel for Xerox, Ms. Neal, Mr. Meixel, and Mr. Allen.

IT IS SO ORDERED.